UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -x
JOSEPH WANG,

                    Petitioner,

          - against -                        13 CV 03524 (DLI)

UNITED STATES OF AMERICA,

                    Respondent.
- - - - - - - - - - - - - - - -x

MEMORANDUM OF LAW IN RESPONSE TO
PETITION PURSUANT TO 28 U.S.C. § 2255

LORETTA E. LYNCH,
United States Attorney,
Eastern District of New York.

PETER A. NORLING,
Assistant United States Attorneys
     (Of Counsel).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . 3

    I.   The Offenses and the Trial. . . . . . . . . . . . 3

    II.  The Sentencing. . . . . . . . . . . . . . . . . . 3

    III. The Collateral Attacks. . . . . . . . . . . . . . 4

    IV.  The Motion for Leave to File a Successive Motion. . . 4

    V.   The Instant Section 2255 Motion . . . . . . . . . . 5

ARGUMENT:

    BECAUSE <u>MILLER</u> IS RETROACTIVE TO CASES ON
    COLLATERAL REVIEW AND APPLIES TO MANDATORY
    GUIDELINES DETERMINATIONS, THE COURT ERRED
    IN SENTENCING WANG UNDER A GUIDELINE
    MANDATING A LIFE TERM OF IMPRISONMENT
    AND HE SHOULD THEREFORE BE RESENTENCED . . . . . . . . . . 6

    I.   <u>Miller</u> Applies Retroactively to Cases
        on Collateral Review. . . . . . . . . . . . . . . . 6

        A.   <u>Miller</u> Announced a New Rule. . . . . . . . . . 8

        B.   The New Rule Announced in <u>Miller</u>
            Is Substantive. . . . . . . . . . . . . . . . 10

    II.  <u>Miller</u> Applies to Guideline-Mandated
        Life Sentences. . . . . . . . . . . . . . . . . . 20

    III. A <u>Miller</u> Claim Can Be Brought in a
        Second Section 2255 Motion .. . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 23

PRELIMINARY STATEMENT

The government submits this memorandum in response to Petitioner Joseph Wang's motion for relief under 28 U.S.C. § 2255. Wang was convicted, after a jury trial in 1992 before then-District Court Judge Reena Raggi, of various offenses, including racketeering, in violation of 18 U.S.C. § 1962(c) (Count 1), racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2), and murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 6 and 7) and was sentenced to life imprisonment on these counts and to lesser terms on other counts. His conviction was affirmed. See United States v. Wong, 40 F.3d 1347 (2d Cir. 1994).

Wang now seeks habeas relief based upon the Supreme Court's decision in Miller v. Alabama, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment's Cruel and Unusual Punishments Clause precludes application of a mandatory life term of imprisonment without the availability of parole on defendants who committed their offenses when they were juveniles. As more fully set forth below, while the statutes under which Wang was sentenced to life imprisonment did not require such a term, it was required by the then-mandatory United States Sentencing Guidelines. Because his claim arises in a second petition under Section 2255, he must meet the standards for filing a second or successive petition as set forth in 28 U.S.C. § 2244(b)(2)(A). The case is

before this Court pursuant to an order of the United States Court of Appeals for the Second Circuit dated July 16, 2013, finding that Wang has made a prima facie showing that his claim meets the requirements of for a successive petition because it relies on a new rule of constitutional law -- that set forth in <u>Miller</u> -- made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.  The Court of Appeals ordered this Court to address preliminarily whether the <u>Miller</u> decision announced a new rule of constitutional law made retroactive to cases on collateral review, permitting the underlying Section 2255 petition to proceed.  See Amended Petition For A Writ Of Habeas Corpus ("Pet."), Exh. 1.

As we show below, Wang's issue may be reviewed because it meets the conditions for filing a successive petition set forth in 28 U.S.C. § 2244(b)(2)(A), and, on review of the merits of the Section 2255 motion, <u>Miller</u> applies retroactively to Wang's case. His sentencing under mandatory Guidelines therefore constituted error and he should be resentenced.

## STATEMENT OF FACTS

### I.   The Offenses and the Trial

The facts pertinent to Wang's claim are set forth in Wong.  Briefly, Wong was a member of the Green Dragons gang.  As the Wong court put it,

> The Green Dragons was a violent gang that operated principally in the predominantly Chinese sections of Elmhurst and Flushing in Queens, New York. The members primarily extorted "protection" money from Chinese-run businesses, but also engaged in periodic armed robberies. They frequently employed violence to defend and expand their turf, assaulting, kidnapping, and murdering rival gang members, potential witnesses, and businessmen who refused to pay protection money. The gang amassed a sizeable arsenal of firearms with which to conduct its criminal activities.

Wong, 40 F.3d at 1355.  Wang's involvement in the gang's activities was principally his collecting extortion payments from restaurants, in the course of which he, together with co-defendant Alex Wong, shot to death the manager of the Tien Chiau Restaurant in Queens and a patron at the restaurant.  See Wong, 40 F.3d at 1374.

### II.  The Sentencing

Judge Raggi found that Wang's offense level under the United States Sentencing Guidelines was 45, which required a life term of imprisonment.  Wang was sentenced on October 2, 1992, well prior to the time at which the Guidelines were rendered advisory by the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).  As noted above, he was sentenced to life terms on the

counts here at issue.

III. <u>The Collateral Attacks</u>

Following the affirmance of his judgment of conviction and the denial of his petition for certiorari (<u>see</u> <u>Wang v. United States</u>, 515 U.S. 1137 (1995)), on March 29, 1996, Wang filed a motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. <u>See</u> <u>Wang v. United States</u>, 96 CV 01453 (NG). This motion was denied by Judge Raggi in an order entered February 4, 1997. On December 13, 2005, Wang brought a "motion to alter judgment," under the same docket number, seeking relief under <u>Booker</u>. This motion was denied by order entered January 5, 2006.

IV. <u>The Motion for Leave to File a Successive Motion</u>

By motion filed June 7, 2013, Wang sought leave of the Court of Appeals to file a successive motion in the district court under Section 2255, based upon <u>Miller</u>. Pet. Exh. 2. The Court of Appeals, by order dated July 16, 2013, granted him leave "to file a § 2255 motion raising his proposed claim based on <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012)," although it directed this Court "to address, as a preliminary inquiry under § 2244(b)(4), whether the United States Supreme Court's decision in <u>Miller</u> announced a new rule of law made retroactive to cases on collateral review, and thus permits Petitioner's new § 2255 claim to proceed." Pet. Exh. 1, citing <u>Quezada v. Smith</u>, 624 F.3d 514, 521-22 (2d Cir. 2010), and <u>Bell v. United States</u>, 296 F.3d 127, 128 (2d Cir. 2002) ("the

prima facie standard [applies to] our consideration of successive habeas applications under § 2255.").

V.   The Instant Section 2255 Motion

Accordingly, on July 17, 2013, Wang filed his Section 2255 motion in this Court, attacking his sentence on the ground that it did not comport with the constitutional proposition later announced in Miller.  Pet. at 1-6.  He incorporates by reference his submission to the Court of Appeals seeking leave to file this petition, set forth at Exh. 3A.  In sum, he asserts that Miller is a new rule of constitutional law applying retroactively to cases, such as this case, on collateral review.  Although Miller involved a statutorily-mandated life sentence, as more fully set forth below, Wang asserts that the then-mandatory Sentencing Guidelines, under which Wang's sentence was life imprisonment, is tantamount to a statutorily-imposed term.

ARGUMENT

BECAUSE <u>MILLER</u> IS RETROACTIVE TO CASES ON
COLLATERAL REVIEW AND APPLIES TO MANDATORY
GUIDELINES DETERMINATIONS, THE COURT ERRED
IN SENTENCING WANG UNDER A GUIDELINE
MANDATING A LIFE TERM OF IMPRISONMENT
AND HE SHOULD THEREFORE BE RESENTENCED

As we noted above, Wang's motion presents the issues of

whether <u>Miller v. Alabama</u>, 132 S. Ct. 3455 (2012), is retroactive

to cases, such as this, on collateral review, whether it applies to

life terms under the Guidelines as opposed to those mandated by

statute, and whether a claim under <u>Miller</u> may be brought in a

second motion under 28 U.S.C. § 2255. As we show below, <u>Miller</u>

does apply retroactively, it also applies to Guideline-mandated

sentences, and a claim under Miller may be brought in a second or

successive motion.

I.   <u>Miller Applies Retroactively to Cases on Collateral Review</u>

In <u>Miller</u>, the Supreme Court held that "mandatory life

without parole for those under the age of 18 at the time of their

crimes violates the Eighth Amendment's prohibition on 'cruel and

unusual punishments." <u>Miller</u>, 132 S. Ct. at 2460. The Court noted

that "[t]he mandatory penalty schemes at issue here . . . prevent

the sentencer from considering youth and from assessing whether the

law's harshest punishment proportionately punishes a juvenile

offender." <u>Id</u>. at 2458. Although a juvenile who commits a

homicide may be sentenced to life without parole, <u>id</u>. at 2469, the

sentencer for such a juvenile offense must have "discretion to

impose a different punishment," id. at 2460.

While, under Miller, a defendant could not be sentenced today to a mandatory term of life imprisonment, the issue at this point -- with Wang's conviction having become final with the denial of certiorari years ago -- is whether Miller applies retroactively to cases on collateral review.  See, e.g., Guzman v. United States, 404 F.3d 139, 140-41 (2d Cir. 2005) (final judgment is subject to collateral attack based on subsequent Supreme Court constitutional decision only if decision applies retroactively).  "Under the analysis set forth in Teague v. Lane, 489 U.S. 288 . . . (1989) (plurality opinion), and, as later developed, a new rule of constitutional law does not apply retroactively to cases on collateral review unless the rule is substantive or a 'watershed' rule of criminal procedure that affects 'the fundamental fairness and accuracy of the criminal proceeding.'  Schriro v. Summerlin, . . . 124 S.Ct. 2519 . . . (2004) (quotation omitted)."  Guzman, 404 F.3d at 141.

Miller's rule of constitutional law -- that the Constitution forbids a mandatory life-without-parole sentence for a juvenile offender -- is "new," in that no prior Supreme Court decisions dictated that holding.  Whether it has been made retroactive to cases on collateral review turns on the nature of Miller's rule.  While under Teague's retroactivity principles, new procedural rules are not retroactive to cases on collateral review,

new *substantive* rules, the Supreme Court has established, are retroactively applicable, see Bousley v. United States, 523 U.S. 614, 620 (1998).

As we show below, Miller's holding that juvenile defendants cannot be subjected to a mandatory life-without-parole sentence is properly regarded as a substantive rule. Miller does not simply alter sentencing procedures; rather, it expands the range of possible sentencing outcomes for a category of defendants by requiring that the sentencer have the option of imposing a lesser sentence.

A.   Miller Announced a New Rule

Wang correctly argues that Miller announced a "new" rule under Teague. See Pet. at 4-5. A rule is "new" if it was not "dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301; see Graham v. Collins, 506 U.S. 461, 467 (1993).

Miller's holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," 132 S. Ct. at 2469, was not "dictated" by existing precedent. The Miller Court reached its holding by extending and combining "two strands of precedent." 132 S. Ct. at 2463. As Miller explained, the first line of precedent "adopted categorical bans" on sentences that were excessively severe for a class of offenders. Id.; see, e.g., Kennedy v.

_Louisiana_, 554 U.S. 407 (2008); _Atkins v. Virginia_, 536 U.S. 304 (2002).  Two such cases, the Court noted, involved juvenile offenders.  _See_ _Roper v. Simmons_, 543 U.S. 551 (2005) (categorical ban on capital punishment); _Graham v. Florida_, 130 S. Ct. 2011 (2010) (categorical ban on life-without-parole sentence for a non-homicide offense).  The _Graham_ Court had limited its holding to non-homicide offenses, reasoning that offenders who were both juvenile and who lacked intent to kill had "twice diminished moral culpability."  _Id_. at 2027.  Observing that _Graham_ had compared a juvenile life-without-parole sentence to the death penalty, however, _Miller_ turned to a second line of precedent, decisions "prohibit[ing] mandatory imposition of capital punishment" without consideration of the characteristics of the defendant and his offense.  _Miller_, 132 S. Ct. at 2463-64 (citing _Woodson v. North Carolina_, 428 U.S. 280 (1976) (plurality opinion)).  The _Woodson_ line of decisions rested on the premise that "death is a punishment different from all other sanctions in kind rather than degree" and, therefore, "in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense."  428 U.S. at 303-04.

_Miller_ extended the first line of precedent -- the _Roper-Graham_ line of decisions -- to conclude that juveniles are "constitutionally different" for sentencing purposes, even when,

unlike in <u>Graham</u>, they commit homicide. 132 S. Ct. at 2464 (stating that <u>Graham's</u> reasoning "implicates" all life-without-parole sentences imposed on juveniles, even though <u>Graham</u> "relate[d] only to non-homicide offenses"). <u>Miller</u> then extended the second line of precedent -- the <u>Woodson</u> line of decisions -- beyond its death-penalty context to hold that juveniles may not be subject to mandatory life-without-parole sentences and that the sentencer must consider the characteristics of juvenile defendants before imposing such a sentence. <u>Id</u>. at 2467. Rather than being dictated by precedent, then, <u>Miller's</u> holding rested on the Supreme Court's extension of existing decisions beyond the limits expressed in those decisions. <u>Id</u>. at 2464 (noting that "confluence" of lines of precedent "leads to" the Court's conclusion, not that the conclusion was dictated by prior decisions). Because reasonable jurists considering Wang's conviction at the time it became final could have concluded that then-existing precedent, including <u>Woodson</u>, did not establish the unconstitutionality of mandatory life-without-parole sentences for juveniles who committed homicide, <u>Miller</u> announced a new rule that was not dictated by precedent. See <u>O'Dell v. Netherland</u>, 521 U.S. 151, 156 (1997).

B.    <u>The New Rule Announced in Miller Is Substantive</u>

Wang also correctly argues that the rule announced in <u>Miller</u> is substantive. See Pet.4-5.

Under <u>Teague</u>, new rules of criminal procedure do not

apply retroactively on collateral review of already-final convictions unless they constitute "watershed rules of criminal procedure." <u>Teague</u>, 489 U.S. at 311.  The Supreme Court has held, however, that substantive rules, unlike procedural rules, are not subject to <u>Teague</u> at all and that they necessarily apply retroactively on collateral review.  <u>See</u> <u>Beard v. Banks</u>, 542 U.S. 406, 411 n.3 (2004) ("Rules that fall within what we have referred to as <u>Teague's</u> first exception 'are more accurately characterized as substantive rules not subject to [<u>Teague's</u>] bar.'").  As the Court has explained, "<u>Teague</u> by its terms applies only to procedural rules." <u>Bousley</u>, 523 U.S. at 620.  Because the rule announced in <u>Miller</u> is not solely about procedure but instead also alters the range of sentencing options for a juvenile homicide defendant, it is properly regarded as "substantive" for <u>Teague</u> purposes and therefore applies retroactively to Wang's conviction.

1.  The divide between substantive and procedural rules, as it has evolved in the Supreme Court's decisions, reflects the fundamental difference between the way a case is adjudicated (procedure) and the possible outcomes of the case (substance).  Originally, <u>Teague</u> borrowed from Justice Harlan's formulation to describe "substantive rules," which should be applied retroactively, as those that placed certain primary conduct beyond the reach of the criminal law.  489 U.S. at 307 (citing <u>Mackey v. United States</u>, 401 U.S. 667, 692 (1971) (Harlan, J., concurring)).

The Court subsequently expanded the category to include decisions categorically precluding a particular type of punishment or protecting a particular class of persons from such punishment. See Penry v. Lynaugh, 492 U.S. 302, 329-330 (1989) ("[A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all.").  The Court thus summarized that Teague's bar on retroactive application does not extend to "a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." Saffle v. Parks, 494 U.S. 484, 494 (1990) (citation and internal quotation marks omitted; brackets in original).  The Court again expanded the class of substantive rules in Bousley, 523 U.S. at 620-21, holding that Teague does not apply to changes in the substantive scope of a criminal statute that have the effect of placing certain conduct outside of the reach of the law.  Thus, "[n]ew *substantive* rules . . . include[] decisions that narrow the scope of a criminal statute by interpreting its terms," as well as decisions "that place particular conduct or persons covered by the statute beyond the State's power to punish." Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004).

Under this analysis, substantive rules affect the range of permissible *outcomes* of the criminal process and procedural

rules govern the *manner* of determining those outcomes. To date, the new rules the Court has treated as substantive have categorically prohibited a particular outcome for a particular class of defendants, regardless of the procedure employed. See Summerlin, 542 U.S. at 352 (citing Bousley; Saffle). But while the category of substantive rules "includes" such rules, 542 U.S. at 351, it is not limited to them. See also Danforth v. Minnesota, 552 U.S. 264, 278 (2008) (Teague is grounded in the authority of the courts "to adjust the scope of the writ in accordance with equitable and prudential considerations"). And the category of rules treated as "procedural," and thus not retroactive, has "regulate[d] only the *manner of determining* the defendant's culpability." Summerlin, 542 U.S. at 353 (emphasis in original). Such rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," which, the Court stated, is a possibility too "speculative" to warrant retroactivity. Summerlin, 542 U.S. at 352. Taken together, the Court's descriptions of "substantive" and "procedural" rules under Teague produce the conclusion that rules that go beyond regulating only the manner of determining culpability -- and instead categorically change the range of outcomes -- should be treated as substantive rules.

2. The Miller rule, which holds that a juvenile

defendant may not be subject to mandatory life without parole but instead must be given the opportunity to demonstrate that a lesser sentence is appropriate, <u>see</u> 132 S. Ct. at 2469, categorically expands the range of permissible outcomes of the criminal proceeding. It is therefore a substantive rule.

<u>Miller</u> is not solely about the procedures that must be employed in considering the range of sentencing options. Rather, <u>Miller</u> changes the range of outcomes that a juvenile defendant faces for a homicide offense. A jurisdiction that mandates life without parole for juveniles convicted of homicide permits only one sentencing outcome. <u>Miller</u> invalidates such regimes and requires a range of outcomes that includes the possibility of a lesser sentence than life. That is a substantive change in the law, not solely a procedural one. The <u>Miller</u> rule does not "regulate only the *manner of determining* the defendant's culpability." <u>Summerlin</u>, 542 U.S. at 353 (emphasis in original). Instead, the <u>Miller</u> rule gives juvenile defendants the opportunity to obtain a different and more favorable outcome than was possible before <u>Miller</u>.

By contrast, the decisions that the Supreme Court has classified as procedural have altered only the process used to determine a defendant's culpability without expanding or narrowing the range of possible outcomes of the criminal process. In <u>Summerlin</u>, for instance, the Court emphasized that its holding in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), that a sentencing judge may

not make the aggravating findings that subject a defendant to the death penalty, did not "alter the range of conduct Arizona law subjected to the death penalty." <u>Summerlin</u>, 542 U.S. at 353. "Instead, <u>Ring</u> altered the range of permissible methods for determining whether a defendant's conduct is punishable by death." <u>Id</u>.; <u>see also</u> <u>Saffle</u>, 494 U.S. at 486, 495 (rule concerning the permissibility of instructing the jury not to rely on sympathy for the defendant was procedural; range of outcomes continued to include death or a less severe sentence); <u>Graham v. Collins</u>, 506 U.S. at 477 (rule concerning the manner in which a sentencing jury considered mitigating evidence was procedural; range of outcomes continued to include death or a less severe sentence). Unlike these decisions, <u>Miller</u> does not simply address the "manner of determining" a defendant's culpability; instead, it expands the range of outcomes of the criminal proceeding beyond that permitted by mandatory life-without-parole statutes. It requires that juvenile defendants must have the opportunity to establish that life without parole is not an appropriate sentence. It is therefore a substantive rule.

<u>Miller</u> does differ from previous decisions announcing substantive rules, all of which narrowed, rather than expanded, the range of permissible outcomes of the criminal process by prohibiting a particular outcome for a category of defendants. <u>See</u>, <u>e.g.</u>, <u>Graham</u>, 130 S. Ct. at 2031; <u>Roper</u>, 543 U.S. at 568-75.

Miller does not categorically hold that juvenile defendants may never be sentenced to life without parole for a homicide offense; instead, it requires the sentencer to take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," before such a sentence may be imposed.    132 S. Ct. at 2469.    Thus, Miller stated that its holding "does not categorically bar a penalty for a class of offenders or type of crime" but instead "mandates only that a sentencer follow a certain process -- considering an offender's youth and attendant characteristics -- before imposing a particular penalty."  Id. at 2471.  In that respect, Miller does have a procedural component.

Nothing, however, in Miller implies that the Court viewed its decision as principally procedural, and its holding makes clear that it is not.  By mandating that a juvenile defendant's characteristics be taken into account at sentencing, the Court also mandated that new and more favorable potential outcomes be made available to defendants who previously had faced only one possible outcome: life without parole.  See Miller, 132 S. Ct. at 2469. This is not akin to a procedural rule that simply requires admission of a class of evidence or changing the factfinder from judge to jury.  It requires that new sentencing options be available.  Moreover, the Court did not suggest that its alteration of the range of options available for a sentencer would have only

the "speculative" effect on outcomes of most procedural rules. _Summerlin_, 542 U.S. at 352. Rather, it stated that "we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." 132 S. Ct. at 2469. Certainly, the government may still contend that a life-without-parole sentence should be imposed on a juvenile convicted of a homicide offense. But _Miller_ categorically mandated that a lesser sentence be available as well.

In only one prior context has the Supreme Court invalidated a particular severe sentence as unconstitutional because of its mandatory character, the imposition of mandatory capital punishment. See _Woodson_; _Roberts v. Louisiana_, 428 U.S. 325 (1976); _Sumner v. Shuman_, 483 U.S. 66 (1987). In conclusively ending mandatory death sentences, the Court refused to countenance "a departure from the individualized capital-sentencing doctrine" it had adopted, even for murder by life-term inmates. _Sumner_, 483 U.S. at 78. The Court never had the opportunity to consider whether the _Woodson_ principle was retroactive under _Teague_ because it amounted to a substantive rule. When the Court granted habeas relief in _Sumner_, only three individuals in the United States appear to have been under mandatory death sentences, see _id._ at 72 n.2, and _Teague_ lay 20 months in the future.[3] But it seems

---

[3] Until _Miller_, no other case had extended _Woodson_. In light of the Supreme Court's holdings in _Harmelin v. Michigan_, 501 U.S. 957 (1991) (rejecting Eighth Amendment challenge to mandatory life-without-parole sentence for possession of 650 grams or more of

unlikely that non-retroactivity grounds would have been used to deny habeas relief for a capital defendant who never had *any* opportunity to ask a sentencer to impose a lesser sentence.

Like <u>Miller</u>, <u>Woodson</u> has a procedural component. <u>See</u> <u>Woodson</u>, 428 U.S. at 305 n.40 (plurality opinion) ("[T]he death sentences in this case were imposed under procedures that violated constitutional standards."). But <u>Woodson</u>, like <u>Miller</u>, also does much more. By requiring individualized consideration before imposing the harshest penalty available by law, each decision expanded the sentencing options that must be made available to the sentencer, <u>i.e.</u>, each case changed the substance of the sentencing decision by requiring that a less-harsh sentence be available. And the execution of an individual who had no opportunity to seek a lesser sentence would completely violate the principle of "individualized sentencing" (<u>Sumner</u>, 483 U.S. at 75) that lay at the heart of <u>Woodson</u>. <u>Miller</u> rests on the same principle of "individualized sentencing" as <u>Woodson</u>: a court may not impose the "harshest possible penalty for juveniles" without the juvenile's having an opportunity to ask for a lesser sentence. <u>Miller</u>, 132 S. Ct. at 2460, 2464 n.4, 2466 n.6, 2475. Just as <u>Woodson</u> changed the substance of capital sentencing, <u>Miller's</u> fundamental change in

---

cocaine), and <u>Chapman v. United States</u>, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion."), it seems highly unlikely that <u>Woodson</u> will be extended further.

the law should similarly be regarded as substantive under <u>Teague</u>.[1]

The Supreme Court has held that substantive rules are retroactively applicable on collateral review. <u>See</u> <u>Banks</u>, 542 U.S. at 411 n.3; <u>Bousley</u>, 523 U.S. at 620. As discussed above, <u>Miller</u> should be regarded as a substantive rule for <u>Teague</u> purposes under the analysis in Supreme Court cases. Although <u>Teague</u> itself does not apply to state courts, <u>see</u> <u>Danforth</u>, one state appellate court has concluded that <u>Miller</u> is retroactively applicable as a substantive rule. In <u>People v. Morfin</u>, 2012 WL 6028634, at *11 (Ill. App. Ct. Nov. 30, 2012), the Illinois intermediate appellate court, applying <u>Teague</u>'s framework, held that "<u>Miller</u> constitutes a new substantive rule" because it "mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment." The <u>Morfin</u> court noted that Florida and Michigan appellate courts have concluded that <u>Miller</u> is procedural. <u>See</u> <u>id</u>. at *10-*11; <u>People v. Carp</u>, 2012 WL 5846553 at *19 (Mich. Ct. App. Nov. 15, 2012) (<u>Miller</u> is procedural under Michigan's application of <u>Teague</u> principles because it does not categorically bar life without parole); <u>Geter v. State</u>, 2012 WL 4448860 at *3 (Fla. Dist.

---

[1] We note that two circuits have rejected the analysis set forth in this memorandum and held, for gatekeeping purposes, that <u>Miller</u> is not retroactive to cases on collateral review. <u>See</u> <u>In re Morgan</u>, 713 F.3d. 1365 (11th Cir. 2013); <u>Craig v. Cain</u>, 2013 WL 69128 (5th Cir. Jan. 4, 2013). <u>Johnson v. United States</u>, 720 F.3d 720 (8th Cir. 2013) (per curiam), on the other hand, has held that <u>Miller</u> is retroactive for gatekeeping purposes.

Ct. App. Sept. 27, 2012) (<u>Miller</u> is procedural under state retroactivity law). <u>See also</u> Chambers v. State, 831 N.W.2d 311 (Minn. Sup. Ct. May 31, 2013) (<u>Miller</u> is procedural).

II. <u>Miller Applies to Guideline-Mandated Life Sentences</u>

We agree with Wang that <u>Miller</u> applies to mandatory Sentencing Guidelines under which youth could not be considered in imposing sentence. In the Second Circuit, youthful lack of guidance, for example, was long a prohibited ground for departure, as it was at the time of Wang's offenses. <u>See</u> <u>United States v. Haynes</u>, 983 F.2d 645, 68-69 (2d Cir. 1993). Under <u>Miller</u>, this factor should have been accorded consideration unencumbered by a mandatory Guideline.[1]

---

[1] Judge Raggi, recognizing the general authority to depart under the Guidelines, made comments indicating that she did not view herself as being constrained by the Guidelines, that she was considering the defendant's youth in imposing sentence, and that, in effect, she would have sentenced him to a life term regardless of the Guidelines. However, because we must prove that any constitutional error is harmless beyond a reasonable doubt, <u>see</u> <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967) (constitutional error requires reversal unless harmless beyond a reasonable doubt), and because the constitutionally-significant differences between adults and juveniles as set forth in <u>Miller</u> had not been established as of the time of Wang's sentencing, we do not argue that the <u>Miller</u> error was harmless. <u>See</u>, <u>e.g.</u>, <u>United States v. Crosby</u>, 397 F.3d 103, 118 (2d Cir. 2005) ([E]ven if a judge, prior to [<u>United States v. Booker</u>, 543 U.S. 220 (2005)] indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in section 3553(a). In addition, such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines

III. A <u>Miller</u> Claim Can Be Brought in a
      Second Section 2255 Motion

        While we show above that <u>Miller</u> announced a new rule of
constitutional law that is retroactive to cases on collateral
review, the Court of Appeals' order, as noted, calls for a
determination of the closely-related question of whether the rule
announced in <u>Miller</u> meets the gatekeeping requirements of 28 U.S.C.
§ 2244(b)(2)(A), that is, that "the applicant shows that the claim
relies on a new rule of constitutional law, made retroactive to
cases on collateral review by the Supreme Court, that was
previously unavailable." See <u>Bennett v. United States</u>, 119 F.3d
468, 469-70 (7th Cir. 1997) (a court of appeals' granting of an
application to file a successive motion is "tentative in the
following sense: the district court must dismiss the motion that we
have allowed the applicant to file, without reaching the merits of
the motion, if the court finds that the movant has not satisfied
the requirements for the filing of such a motion" and that "[t]he
movant must get through two gates before the merits of the motion
can be considered."). In addition to demonstrating that the new
rule is retroactive under <u>Teague</u>, then, the movant must show that
the new rule was made retroactive by the Supreme Court. See <u>Tyler
v. Cain</u>, 553 U.S. 656, 666 (2001) (Supreme Court may make a new
constitutional rule retroactive to cases on collateral review by
explicitly so stating in the decision announcing the new rule, or

regime.") (footnotes omitted).

it may "make a rule retroactive over the course of two case . . . with the right combination of holdings."). Here, for the reasons set forth above, the combination of holdings leading to <u>Miller</u> shows that the Supreme Court has, by this manner, made <u>Miller</u> retroactive.

CONCLUSION

        For the reasons set forth above, the motion under 28

U.S.C. § 2255 should be granted and Wang should be resentenced.

Dated: Brooklyn, New York
        September 16, 2013

                                Respectfully submitted,

                                LORETTA E. LYNCH,
                                United States Attorney,
                                Eastern District of New York.

                        By:  _____/s/_____
                                Peter A. Norling
                                Assistant U.S. Attorney


PETER A. NORLING,
Assistant U.S. Attorney,
   (Of Counsel).